_____
)
**WANDA WALKER,**                                      )
                                                      )
  **Plaintiff,**                            )
                                                      )
   **v.**                               )  **Case No. 16-cv-01112 (APM)**
                                                      )
**JAMES N. MATTIS,**                                  )
                                                      )
  **Defendant.**                             )
_____ )

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Wanda Walker brings a Title VII claim of retaliation and hostile work environment following her termination from the Defense Intelligence Agency ("DIA" or "Defendant"). Plaintiff, a former Security Specialist at the DIA, alleges that she was retaliated against for filing Equal Employment Opportunity complaints in which she alleged discrimination based on her race, color, and other protected traits. *See* Second Am. Compl., ECF No. 19, ¶¶ 19, 22, 32, 48, 49, 52, 53. Defendant has moved for summary judgment. *See* Def.'s Mot. for Summ. J., ECF No. 29 [hereinafter Def.'s Mot.]. The court assumes that both parties are familiar with the record and so refers to the facts only as necessary. After careful scrutiny of the record, this Court finds that there remain genuine disputes of material fact as to certain bases for Plaintiff's retaliation claims, such that a reasonable jury could find in Plaintiff's favor. Accordingly, Defendant's Motion for Summary Judgment is granted in part and denied in part

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of a material fact exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015). In evaluating a motion for summary judgment, the court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To defeat a motion for summary judgment, the nonmoving party must buttress its claims with "more than mere unsupported allegations or denials"; its opposition must be "supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial" and that a reasonable jury could find in its favor. *Elzeneiny*, 125 F. Supp. 3d at 28 (citing Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## III.     DISCUSSION

In addition to prohibiting a federal employer from discriminating against an employee based on her race, sex, religion, or nationality, 42 U.S.C. § 2000e-16(a), Title VII prohibits a federal employer from retaliating against an employee for opposing any practice that is made unlawful by the Act, *see Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015) (citing 42 U.S.C. § 2000e–3(a)). In this case, Plaintiff claims to have been retaliated against in multiple ways. She also asserts a claim of retaliatory hostile work environment. The court begins with her discrete retaliation claims, and then addresses her hostile work environment claim.

### A.  Discrete Retaliation Claims

To make out a prima facie case of retaliation, a plaintiff must demonstrate that she: (1) engaged in protected activity; (2) was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012). Filing a complaint of discrimination, as Plaintiff did here, plainly constitutes protected activity. *See Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006). With respect to the adversity requirement, "'[a]dverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse," which means "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). And, finally, a causal link between a protected activity and the subsequent adverse employment action must "be prove[n] according to traditional principles of but-for causation." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Establishing a prima facie case shifts the burden to the employer to provide a "legitimate, nondiscriminatory or non-retaliatory reason for the challenged action." *Morris v. McCarthy*, 825 F.3d 658, 668 (D.C. Cir. 2016). "Once the employer proffers a non-retaliatory reason for the challenged employment action, the burden-shifting framework falls away, and the 'central question' becomes whether 'the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory [or non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the employee.'" *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) (quoting *Brady v. Office of Sergeant at Arms*,

520 F.3d 490, 494 (D.C. Cir. 2008)). "[A] court reviewing summary judgment looks to whether a reasonable jury could infer . . . retaliation from all the evidence." *Carter v. Geo. Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). The employee may survive summary judgment "by providing enough evidence for a reasonable jury to find that the employer's proffered explanation was a pretext for retaliation or discrimination." *Morris*, 825 F.3d at 668. Only if in light of this evidence no reasonable jury could find that the Plaintiff was retaliated against should a court grant summary judgment for the defendant. *See Hamilton*, 666 F.3d at 1351.

### 1.    *Five-Day Suspension*

The court begins with Plaintiff's claim that her five-day suspension in 2011 was retaliatory. Defendant asserts the suspension was imposed because Plaintiff had committed a security violation by disclosing the protected identity of a DIA employee to her attorney. *See* Def.'s Mot., Mem. of Pts. & Auths. in Supp., ECF No. 29-2 [hereinafter Def.'s Mem.], at 5; Def.'s Mot, ECF No. 29-4 [hereinafter Def.'s Ex. 1], at 18–22.[1] Whether a reasonable jury could infer retaliatory motive is a close call. On the one hand, more than seven months passed between Plaintiff's filing of her first EEO complaint, on July 19, 2010, and the formal notice recommending her five-day suspension, dated March 9, 2011. *See* Def.'s Ex. 1 at 2, 21–22. The D.C. Circuit has not adopted a bright-line rule for when temporal proximity cuts off a reasonable inference of causation, but precedent provides that a "three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation." *Hamilton*, 666 F.3d at 1357. Thus, the seven-month passage of time here weakens any inference of but-for causation. *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015).

---

[1] Citations to the parties' exhibits are to the page numbers automatically generated by CM/ECF.

On the other hand, Plaintiff has offered evidence to suggest potential deficiencies in the investigation of her alleged misconduct, as well as the commission of egregious error in the ultimate finding of wrongdoing underlying the five-day suspension. "An employer's investigation that is so unsystematic and incomplete that a factfinder could conclude that the employer sought, not to discover the truth, but to cover up its own discrimination can also permit a factfinder to find pretext." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 296 (D.C. Cir. 2015); *see also Gipson v. Wells Fargo N.A.*, 460 F. Supp. 2d 15, 30 (D.D.C. 2006) (stating that "deviation[s] from typical procedure . . . may support a finding of retaliation."). Moreover, "[a] plaintiff might also establish pretext with evidence that a factual determination underlying an adverse employment action is egregiously wrong, because 'if the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so.'" *Burley*, 801 F.3d at 296 (citation omitted). Here, in support of her defense, Plaintiff's then attorney (not counsel presently representing her) submitted an affidavit, dated March 9, 2011, *see* Pl.'s Mem. in Opp'n, ECF No. 30 [hereinafter Pl.'s Mem.], Pl.'s Ex. B, ECF No. 30-3, at 25–26—the very same date that Plaintiff received the formal Notice of Proposed Suspension, *see* Def.'s Ex. 1 at 21–22—in which he attested that Plaintiff *had not* disclosed to him any DIA employee's identity or contact information, but that he had learned such information from a different source. Pl.'s Ex. B at 25–26. One might reasonably expect that such important, exculpatory evidence would be expressly referenced and discussed in either the Notice of Proposed Suspension, *see* Def.'s Ex. 1 at 20–22, or in the final suspension decision, *see id.* at 18-19. Yet, neither document mentions the attorney's affidavit, let alone explains why decision-makers deemed it not to be exculpatory. *See* Pl.'s Ex. B at 34 (letter from Plaintiff to the Deputy Director for Counterintelligence and Human Intelligence complaining that "[m]anagement completely ignored my lawyer's written statement"). Moreover, there is a

genuine dispute of material fact as to whether Defendant provided Plaintiff with access to the evidence against her. Plaintiff says she was denied the opportunity to review the evidence against her, *see id.* at 24, 34, while the final suspension notice states that Plaintiff was "provided an opportunity to review the materials relied upon to support the proposed suspension," Def.'s Ex. 1 at 18. Finally, the question of procedural irregularities is bolstered by the testimony of Brandon Kasen, an intelligence officer at DIA, *see* Def.'s Ex. 1 at 3, who stated that although alleged security violations by DIA employees "normally" come through his office, Plaintiff's report "never came through our office and I don't know why." Pl.'s Mem., Pl.'s Ex. C, ECF No. 30-4, at 7. Kasen's testimony could be understood to mean that Plaintiff's suspension did not follow ordinary procedures.

There is also some dispute as to *who* initially recommended Plaintiff's suspension. Defendant contends that human resources officer Barbara Frey made the recommendation,[2] while Plaintiff provides evidence that employee relations specialist Katherine Newmann made the recommendation. *Compare* Def.'s Statement of Material Facts, ECF No. 29-1 [hereinafter Def.'s Facts], ¶ 9, *with* Pl.'s Ex. B at 40–41.

In the end, the court must draw from the evidence all reasonable inferences in Plaintiff's favor. Notwithstanding the length of time between the protected activity and the adverse action, because there are genuine disputes of fact as to the regularity of the investigatory process and Plaintiff's ultimate responsibility for the alleged security violation, a reasonable jury could find Defendant's non-retaliatory reason for the five-day suspension to be pretext. Accordingly, the court denies Defendant's motion for summary judgment as to that adverse action.

---

[2] Frey is an Employee Management Specialist in the DIA's Human Resources department, and is not in Plaintiff's direct chain of command. *See* Def.'s Statement of Material Facts, ECF No. 29-1, ¶ 2; *see also* Pl.'s Ex. B at 3.

## 2.    *Denial of Deployments*

Next, Plaintiff claims that Defendant denied her two separate deployments to Afghanistan in retaliation for her protected activity. But according to Defendant, Plaintiff was denied overseas deployments because of a pending disciplinary action and because of her continued misconduct. *See* Def.'s Mem. at 6–7; Def.'s Reply to Pl.'s Opp'n, ECF No. 34, at 7–8. Defendant's non-retaliatory explanation mistakenly conflates Plaintiff's two deployment requests, and the court finds that there remain genuine disputes of fact as to the reasons for each denial.

First, Plaintiff sought and, in June 2011 received, approval for a September 2011 deployment to Afghanistan. *See* Pl.'s Ex. B at 10. Following the approval, Keith Newman, Plaintiff's first-line supervisor, inquired of employee relations specialist Katherine Newmann whether Plaintiff's ongoing EEO case precluded her deployment, to which Newmann responded it did not. Pl.'s Ex. B. at 11; *see also* Pl.'s Facts, ECF No. 30-1, ¶ 19. But Newmann added that "there are other outstanding issues regarding Ms. Walker," which she wanted "to discuss" with Barbara Frey. Pl.'s Ex. B. at 11. Defendant does not, however, identify what "outstanding issues" prevented Plaintiff from deploying. Rather, Defendant argues that Kolleen Yacoub, Chief of the Office of Mission Support—not Keith Newmann, her first-line supervisor—"relied upon the recommendation of Human Resources" when denying the deployment. Def.'s Mem. at 5–7. That explanation is not, however, supported by the evidence. Yacoub testified that, "I did not directly deny [the deployment] . . . . I believe it was Mr. Newman who actually said to the deployment manager [Plaintiff] will not be able to deploy." Def.'s Ex. 1 at 61; *id.* at 63 (agreeing the Mr. Newman made the decision not to permit deployment). Moreover, Yacoub could not recall whether the reason for the denial was the "IG investigation that was ongoing *or* the EEO investigation." *Id.* at 64–65 (emphasis added). Thus, Yacoub's recollections provide no clarity.

Defendant also points to an email that Keith Newman sent to Plaintiff on *October* 21, 2011, in which Newman states that "continued misconduct" is the reason he cannot support her deployment request. Def.'s Reply at 7–8 (citing Pl.'s Ex. B at 12). That e-mail, however, relates to Plaintiff's *second* deployment request, not her first, which was formally denied months earlier. The only record evidence of a reason for the denial of the first deployment actually comes from Keith Newman, who testified during the EEO investigation that Plaintiff did not deploy to Afghanistan because the position was changed from a civilian position to a contractor position. *See* Pl.'s Ex. B at 52–53. But Defendant does not endorse that reason now. Thus, there remains a genuine dispute of fact as to the actual reason for the denial of Plaintiff's first deployment request.

Plaintiff's second deployment request came in September 2011. As noted, although Defendant confuses the first and second denials, Defendant points to Newman's determination that, due to Plaintiff's "continued misconduct," he could not support the September deployment request. *Id*. at 12. The potential shortcoming of this explanation, however, is that DIA policy provides that, a supervisor only can recommend disapproval of an employee's deployment request, and that the Deputy Under Secretary of Defense (Civilian Personnel Policy) possesses the final say with regard to deployment denials. Pl.'s Ex. B at 18. Requests to the Deputy Under Secretary must be submitted in accordance with the operative procedure. *See id*. Here, the record is silent as to whether anyone above Newman disapproved of Plaintiff's deployment request or whether Newman's recommendation operated as the denial, and whether Plaintiff's deployment request was submitted in accordance with the relevant procedure. Without facts to answer these outstanding questions, it is inappropriate to enter summary judgment in Defendant's favor.

In total, a rational jury might could find that Defendant's denials of Plaintiff's requests for deployment were a pretext for retaliation. Accordingly, this portion of Plaintiff's claim survives summary judgment.

### 3. Denial of Promotion

Plaintiff asserts that DIA denied her a promotion because of her protected activity. Second Am. Compl. ¶¶ 39, 48–49. Defendant responds that Plaintiff was denied a promotion to security specialist because a better-credentialed applicant was selected. *See* Def.'s Mem. at 11; Def.'s Facts ¶¶ 24–25. Plaintiff offers no evidence to rebut this proffered non-discriminatory reason. *See generally* Pl.'s Mem. in Opp'n; Pl.'s Facts. Accordingly, the court grants summary judgment in favor of Defendant as to this issue.

### 4. Negative Performance Rating

Plaintiff also alleges that her supervisors gave her a lower performance rating than she had earned in prior review periods, and that this negative review came about because she filed a second EEO complaint in August 2011. *See* Pl.'s Mem. in Opp'n at 3; *see also* Def.'s Ex. 1 at 1. Defendant justifies the action on the simple ground that Plaintiff deserved the critical marks—her work performance had dropped from the prior year. Def.'s Mem. at 9–10. It also argues that the unfavorable review resulted in no tangible harm to Plaintiff. *Id.* at 10.

The court finds that, without more, Plaintiff's negative performance rating is not actionable. The D.C. Circuit does not consider all poor performance ratings to rise to the level of material adversity, even under the broader materiality standard in retaliation cases. *See Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007). Rather, it demands that there be some non-speculative tangible harm that arises from the review. For instance, in *Weber v. Battista*, the Circuit found two performance evaluations to qualify as adverse actions "insofar as they resulted

in [the plaintiff] losing a financial award or an award of leave." *Id.* *See also Bridgeforth v. Jewell*, 721 F.3d 661, 664 (D.C. Cir. 2013) (describing *Weber* as having held that "lowering an employee's performance evaluation could be materially adverse action if the lowered score resulted in the employee not receiving a cash award"); *Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008) (holding that "the issuance of the lowest performance rating of her career combined with the lowest performance bonus in her branch" constituted materially adverse action). Here, Plaintiff identifies no tangible harm, financial or otherwise, connected to her lowered performance rating in August of 2011. *See* Pl.'s Mem. in Opp'n at 3; *see* Pl.'s Facts ¶¶ 44–51. To the contrary, she does not dispute that there was a shortage of bonus money for the year in which she received the lower rating; that only employees with a score of 4.0 or higher received an award that year (Plaintiff received a 2.6 in August 2011, and 3.2 the prior review period); and that neither Newman nor any of his subordinates received a cash award for that year. Def.'s Facts ¶¶ 21–23 (citing Def.'s Ex. at 77–79); *see* Pl.'s Facts at 1. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim that Defendant retaliated against her by issuing a negative performance review.

### 5. *Denial of Requests to Attend Conferences*

Plaintiff's retaliation claim based on Defendant's denial of her requests to attend DIA conferences is not actionable because she has not established that the denials were materially adverse. A denial of a training opportunity is not an adverse employment action unless it "affected some material change in [the employee's] employment conditions, status or benefits." *Lester v. Natsios*, 290 F. Supp. 2d 11, 29 (D.D.C. 2003). Here, Plaintiff has provided no evidence from

which a reasonable fact-finder could conclude that the denials here caused any such change.[3] Summary judgment is therefore appropriate here in favor of Defendant.

6.    *Termination*

DIA terminated Plaintiff in the spring of 2012 and cited a wealth of reasons for the action, including Plaintiff's accrued suspensions, insubordination, and unapproved entry of overtime. *See* Def.'s Facts ¶¶ 32–33, 35–38, 40–46; *see also* Def.'s Ex. 1 at 24–27, 34–35; Pl.'s Resp. to Def.'s Statement of Facts, ECF No. 30-1, ¶¶ 33–46. Plaintiff admits to a number of infractions—such as missing meetings and failing to prepare reports—but offers justifications for her behavior. Although once more a close call, the court finds that Plaintiff has come forward with sufficient facts to call into question at least some of the non-retaliatory reasons for her termination.

The court already has addressed some of the grounds for her termination that might be pretextual, such as the five-day suspension. Different evidence calls into question some of the other reasons offered for termination. Take, for example, the justification that Plaintiff submitted a timesheet with 20 hours of overtime without authorization. Def.'s Ex. 1 at 25–26. While Defendant dramatically characterizes Plaintiff as having violated "agency overtime procedures" by seeking overtime pay, without prior permission, for time spent completing EEO paperwork, *id.* at 26, the record evidence shows that Plaintiff initially did not put in for overtime pay and only later sought guidance from Human Resources as to whether overtime was appropriate for those hours—which, Plaintiff noted, were "not pre-approved"—and followed instructions as to how to account for it, *see* Pl.'s Ex. B at 8, 29. Thus, a reasonable jury might have reason to question the legitimacy of improperly submitted overtime as a basis for her dismissal. Additionally, Plaintiff's

_____

[3] For the same reason, to the extent Plaintiff's briefs may be construed as alleging retaliation based on a reduction in her duties, *see* Def.'s Mem. at 12–13, the claim fails and Defendant is entitled to summary judgment on this claim as well.

supervisors held her to account for failing to complete certain "SCIF" reports, *see* Def.'s Ex. 1 at 25. But Plaintiff states that she did complete two or three of the reports and only discontinued doing so after her direct supervisor, Newman, agreed with her view that the reports were redundant, leading Plaintiff to believe Newman no longer required them; Plaintiff also claims Newman also never asked her to complete the reports after that point. *See* Pl.'s Mem., Ex. A, ECF No. 30-2, at 57–59. Thus, if Plaintiff is to be believed, she was not insubordinate for failing to complete the SCIF reports.

The foregoing is not to say that Plaintiff has brought sufficient forth evidence of pretext to rebut each non-retaliatory reason for her firing. She has not. Nor is the court acting as a "super-personnel department" examining Defendant's employment decisions. *See Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006) (internal citation omitted). Rather, if the ultimate question here is whether a reasonable jury could infer retaliation from all of the evidence, the answer to that question is "yes." A jury will have to decide whether her protected activity was the "but-for" cause of her firing.

### B. Hostile Work Environment

Finally, the court turns to Plaintiff's retaliatory hostile work environment claim. The D.C. Circuit recognizes that a hostile work environment can amount to retaliation under Title VII. *See Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006). A hostile environment can result from the "cumulative effect" of lesser, non-actionable retaliatory actions. *Nat'l Ry. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). These actions "must be of such severity or pervasiveness as to alter the conditions of employment and create an abusive working

environment." *Baird*, 792 F.3d at 169 (cleaned up). Severity and pervasiveness are determined by a totality of the circumstances. *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Viewing the evidence in a light most favorable to Plaintiff, the court believes that a reasonable jury could conclude that Plaintiff was subjected to a hostile work environment in retaliation for her protected activity. As described above, Plaintiff has come forward with evidence that, if believed, shows that that she was subjected to a series of materially adverse actions over a period of months, ranging from twice refusing to deploy her to Afghanistan, suspending her for improper reasons, and ultimately terminating her. Moreover, there is evidence from Plaintiff suggesting that she was subjected to lesser workplace indignities following her EEO complaints, such as being stripped of certain job duties, *see* Pl.'s Ex. A at 91–92, and the assignment of menial tasks like paper shredding, *id.* at 12. At least one other employee agreed that there was an "immediate change" in the treatment Plaintiff received after filing her EEO complaint. *See* Pl.'s Ex. B at 48.

In sum, when taken as a whole, a reasonable jury might find these actions to have risen to the level of a retaliatory hostile work environment.

## V.     CONCLUSION AND ORDER

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 29, is granted in part and denied in part.

Dated:  July 27, 2018

Amit P. Mehta
United States District Judge